SOUTHERN STATES POWER COMPANY v. HERMIA PITTMAN.

165 So. 893.
Opinion Filed February 6, 1936.
Rehearing Denied March 6, 1936.

*Finch & Lewis,* for Plaintiff in Error;

*John H. Carter* and *John H. Carter, Jr.,* for Defendant in Error.

. DAVIS, J.—Plaintiff below was one Hermia Pittman, who sued the Southern States Power Company and recovered judgment against it in the sum of $2,394.00, with interest

at 8% from the date of the filing of the suit. The declaration was in assumpsit and contained a single common count for money had and received. The plea was "never indebted." Final judgment was entered pursuant to the verdict of a jury finding all disputed matters of fact in plaintiff's favor. So the case comes here on writ of error solely on the proposition of law involved in the holding of the trial court that the evidence legally warranted a recovery.

The facts established by the verdict are substantially as follows: Central Public Service Company was a foreign holding corporation which sold its own capital stock to the public through the local office and employees of operating companies having an association with it to that end. The defendant Southern States Power Company was the local utility operating company at Marianna and maintained there its local business office headed by a general manager, and conducted through a chief clerk and office employees. While the Central Public Service Corporation owned no stock in the local operating utility, it did have an interlocking vice-president and director; used the local office and employees of the Southern States Power Company at Marianna as a medium through which to market its own stock; and with the consent and co-operation of the local operating utility, was allowed to place its own name upon the office window and in the electric sign suspended over the sidewalk under circumstances suggesting that the two corporations were the same in their relationship to the public transacting business at that place. The local operating company (Southern States Power Company) allowed checks given for the purchase of stock in the holding company (Central Public Service Corporation) to be taken in its name and to be handled through its office by the chief clerk,

then converted into exchange for the holding company. The plaintiff, Hermia Pittman, bought a small block of the holding company stock and gave her check for it payable to the defendant company (Southern States Power Company) after having been solicited at the latter's office by the salesman for such stock to purchase same under a representation that the holding company and the operating company were practically the same, that the stock was better than a bank, was absolutely safe and could not fail; that all that plaintiff had to do if she wanted her money back was to turn her stock in at any time and get it if she became dissatisfied.

Under such conditions and circumstances of the transaction, the Southern States Power Company, by its chief clerk, in its own office, and with its regular endorsement stamp, caused the check so made payable to it to be cashed by the Marianna Bank upon which it was drawn, after which the proceeds were remitted to the holding company, or its broker, at Chicago.

Subsequent events in the public utility stock field of operations caused Miss Pittman to invoke her alleged right to surrender her stock in consideration of the return of its purchase price as she testified had been promised to her in the first instance. She was informed that the company had ceased redeeming. Her demand was not complied with, so she sued the company to which her money had been paid, claiming in effect a right to rescind the transaction, as from the beginning, on the ground that the stock sold and delivered to her through her transactions with Southern States Power Company on behalf of the holding company was never stock of the description it was represented to be, therefore the consideration paid for it should be returned to her by the company to which it had been made payable.

While much of the above statement of facts cannot be said to be uncontroverted by other evidence, some of which is in direct refutation thereof, yet the foregoing is a characterization of the facts which the trial jury could well have believed from the evidence. Therefore the liability of the defendant must be tested by the facts as heretofore summarized, since the trial jury was entitled to believe plaintiff's version of the transaction, as against the defendant's version if it thought the former to be true. Jacksonville Traction Co. v. Greene, 113 Fla. 316, 151 Sou. Rep. 523.

Plaintiff contends that the stock she got upon the strength of the money she turned over to the defendant was fake stock and no good; that while a few dividends were paid on it to sustain the stock selling operations until they fell through, that at no time did the stock ever have any intrinsic market value whatsoever; that it was disposed of to her through high pressure salesmanship amounting to a fraud upon her when it was represented untruthfully to the purchaser that it could be returned and the money paid for it obtained back at any time on demand. There is evidence from which the jury could have concluded that plaintiff's contentions were well founded in fact.

A common count lies for money had and received upon a consideration of money obtained through imposition or through an undue advantage taken of the plaintiff's situation, contrary to law and good conscience. The theory of recovery is the right of the party imposed upon to rescind that *transaction* under which the consideration passed and thereupon to insist upon the return of the consideration or its value as an incident to the accomplished act of rescission. Previous cases decided by this Court support this rule. Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 Sou. Rep. 182. The rule of recovery extends to all cases wherein

the plaintiff becomes entitled to sue for money had and received by the defendant which was so had and received under circumstances which, *ex aequo et bono,* the defendant ought to refund upon demand. St. Johns Electric Co. v. St. Augustine, 81 Fla. 588, 88 Sou. Rep. 387; Cullen v. Seaboard Air Line R. Co., 63 Fla. 122, 58 Sou. Rep. 182; Willis v. Fowler, 102 Fla. 35, 136 Sou. Rep. 358; Citizens Bank v. First Nat. Bank, 101 Fla. 908, 132 Sou. Rep. 478; Gilmore v. Texas Co., 100 Fla. 169, 129 Sou. Rep. 587; Love v. Brown Develop. Co., 100 Fla. 1373, 131 Sou. Rep. 144.

It has also been decided in this State that even where there has been an express contract entered into between the parties, whether such contract be a simple one or a contract under seal, *that after such contract has been lawfully rescinded* and rescission has been effected under circumstances consistent with the right of the plaintiff to recover an amount of money paid over in consideration of the rescinded contract that general assumpsit for money had and received will lie to recover such amount. Cox v. Gross, 97 Fla. 848, 122 Sou. Rep. 513; Evans v. Givens, 22 Fla. 476; Bacon v. Green, 36 Fla. 325, 18 Sou. Rep. 870; Wicker v. Hampton, 104 Fla. 400, 140 Sou. Rep. 202; Gilmore v. Texas Co., 100 Fla. 169, 129 Sou. Rep. 587; Rogers v. Logan, 274 Fed. 299; Citizens Bank of Ft. Myers v. First Nat. Bank, 101 Fla. 908, 132 Sou. Rep. 478; Young v. Victory, 112 Fla. 66, 150 Sou. Rep. 624; Sears v. Gulf Refining Co., 113 Fla. 714, 143 Sou. Rep. 759; 152 Sou. Rep. 1; Johnson v. Town of Anthony, 116 Fla. 302, 156 Sou. Rep. 732.

But something contractual in nature must have given rise to the situation complained of as the ground for recovery. The mere fact that a tort has been committed as a means of inducing the plaintiff to part with the money sued for is not sufficient in itself to support the action of assumpsit, as

was held in an earlier case involving this same defendant. Southern States Power Company v. Ivey, 118 Fla. 756, 160 Sou. Rep. 46. Compare: Brandon v. Pittman, 117 Fla. 678, 158 Sou. Rep. 443, still another case in this same series of cases involving stock sales made through Southern States Power Company.

We think the present case is to be distinguished from the case of Southern States Power Co. v. Ivey, *supra,* by reason of the showing here made that rescission of the stock purchase transaction with company by which it was procured and brought about in the first instance, is sufficient to support the recovery allowed by the judgment appealed from, it appearing that the stock purchase transaction was made under an express reservation by plaintiff of an acknowledged legal right to rescind it at any subsequent time should plaintiff find seller's representations untrue, and desire her money refunded, a reasonable time for exercising the right of rescission being of course implied, but that element not being in controversy on this appeal.

If the rescission understanding was as contended for by the plaintiff (and which the jury so found) then the duty of making the refund of the consideration devolved upon the particular company (the defendant) to which plaintiff's check had been made out and cashed, namely, the Southern States Power Company. The fact that the defendant company had remitted the money received by it to its associate (or principal, as the case may be between the company whose stock was sold and the company which held it) was not a discharge of the obligation by which such money was first acquired and under which, *ex aequo et bono,* it was due to be returned in the event of plaintiff's rescission.

The judgment is affirmed.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

ELLIS, P. J., and BROWN, J., dissent.