## WILSON CYPRESS CO. v. ATLANTIC COAST LINE R. CO.

### CUMMER SONS CYPRESS CO. v. SAME.

Nos. 9199, 9211.

Circuit Court of Appeals, Fifth Circuit.

Feb. 16, 1940.

Henry P. Adair, of Jacksonville, Fla., for appellant Wilson Cypress Co.

Henry P. Adair, Clarence G. Ashby, and Victor Blue, all of Jacksonville, Fla., for appellant Cummer Sons Cypress Co.

Carl H. Davis, of Wilmington, N. C., Charles Cook Howell, of Jacksonville, Fla., John B. Sutton, of Tampa, Fla., and Philip H. Alston, of Atlanta, Ga., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

These suits begun in the State, and removed to the Federal Court, were for the recovery of freights exacted, in excess of the Florida Railroad Commission, "Cummer" scale, for the hauling of logs in Florida between February 19, 1929, and March 12, 1931. The claim was that, exacted under the purported authority of the Interstate Commerce Commission order, dated August 10, 1928, and effective February 19, 1929, fixing higher rates than the "Cummer" scale, they were wrongfully exacted, because that order was declared invalid and annulled, as of its effective date, and the "Cummer" scale was in force for the period as the only lawful rate.

The defense was (1) res judicata;[1] (2) that ex aequo et bono plaintiffs could not

---

[1] By the judgment of the Supreme Court in Atlantic Coast Line v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451, and the decree of dismissal on the mandate of that court entered July 13, 1935, vacating and annulling its decree of April 14, 1934 and ordering "the claims for restitution filed in constituent causes 511, 512 and 514 by Brooks-Scanlon Corporation, Cummer Cypress Company, Wilson Cypress Company, Wilson Lumber Company of Florida

recover, for though the order of the Interstate Commerce Commission under which the rates were exacted, was declared invalid and annulled, the same rates on re-examination, were re-established by the Commission, effective February 25, 1933, its order re-establishing them was affirmed and defendants' superior equities against plaintiff's claims were declared, established and given effect by the decision and judgment of the Supreme Court and of the District Court on its mandate in the Atlantic Coast Line case, supra. Submitted on the pleadings and a stipulation[2] in each of the causes, there was a final judgment for defendants and plaintiffs appeal.

Appellants concede, as they must, that the ordinary consequence of a judgment of dismissal in equity is the final disposition of the suit and of all claims and demands within its purview, Kelliher v. Stone & Webster, Inc., 5 Cir., 75 F.2d 331; Opelousas-St. Landry Securities Co. v. United States, 5 Cir., 66 F.2d 41; Aurora City v. West, 7 Wall. 82 and 102, 19 L.Ed. 42; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; and that a judgment of dismissal which is intended to be and is, a disposition of the cause of action on its merits, is a final judgment and res judicata. "It is a well established rule that a final decree in chancery regularly dismissing a bill on the merits, when the matters of the bill have been passed upon, and without any reservation of the complainant's right to sue thereafter, is a bar to any new bill between the same parties upon the same matter." Black on Judgments, (2d. Ed.) Vol. 2, § 720; Durant v. Essex Co., 7 Wall. 107, 19 L.Ed. 154; Baker v. Cummings, 181 U.S. 117, 21 S.

Ct. 578, 45 L.Ed. 776; Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148; Southern Pac. R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Oklahoma v. Texas, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831.

They insist though that there is no res judicata here because the proceedings in the Atlantic Coast Line cases were not the same kind of proceedings as those here, and therefore the matters at issue there were not the same as those at issue here. The proceedings there, they say, were by motion invoking a limited and discretionary jurisdiction in equity, and the proceedings here, are law actions to recover as of right, moneys unlawfully had and received. They insist further, that if this is not a valid difference, it appears from the opinion of the Supreme Court in that case, that its order and the decree entered on its mandate were not intended to be, and were not, final orders dismissing on the merits the claims asserted, but merely orders declining to assert the equitable jurisdiction and remitting plaintiffs to their undoubted remedy at law. They support the first ground, by pointing out that the proceeding brought in the Federal Courts was brought, not as an independent action at law in a court of general jurisdiction, but by a motion for restitution in a statutory court of limited jurisdiction, and by insisting that in the very nature of the court and of the motion on which the matter proceeded, it was not and could not be, the equivalent of, the suits at bar, law actions in the state courts of Florida for the recovery of freight overcharges affirmatively accorded to plaintiffs by Florida Statutes and Decisions. In support of their second ground, they argue, that if a general

and State of Florida, and E. S. Matthews, Mamie Eaton-Greene (for whom J. W. Carter had been substituted) and W. B. Douglas as and constituting the Florida Railroad Commission for the use and benefit of the several shippers therein named, be and the same are hereby dismissed."

2 "1. The claims involved in said cause are the same, and recovery is herein sought of the same overcharges, which were asserted by plaintiff in the restitution proceedings formerly pending in the District Court of the United States for the Northern District of Georgia and considered by the Supreme Court of the United States in its decision in Dockets 344 and 345, October Term, 1934, styled:

"Atlantic Coast Line Railroad Company, Appellant, v. The State of Florida, et al., Appellees,"

"State of Florida, et al, Cross-Appellants v. United States of America, Interstate Commerce Commission, et al, Appellees,"
which said cases were decided by that Court on April 29, 1935, and are reported in 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451.

"2. The plaintiff and defendant in this cause were parties in said restitution proceedings referred to and described in Paragraph 1 above.

"3. The cause of action alleged in counts 1 to 4 inclusive, of the declaration in this cause is the same as the cause of action alleged in counts 5 to 8, inclusive, of said declaration."

and unqualified dismissal of the motions for restitution in the Federal Court, would have operated as res judicata of the demands now asserted, the orders actually entered, did not so operate, for, the opinion of the Supreme Court, in ordering the reversal of the lower court decree and the dismissal of the motions, carefully guarded and limited the effect of those orders, so that they constitute mere refusals to affirmatively exert the equity jurisdiction invoked, with a remission of plaintiffs to a law court for the maintenance of their rights.

We cannot at all agree. The invoked jurisdiction of the Federal Court to order restitution, was not a half jurisdiction, it was full, complete and adequate to consider and determine plaintiff's right to restitution on account of the claimed overcharges, and to accord or deny, the relief they prayed. Perkins v. Fourniquet, 14 How. 328, 14 L.Ed. 441; Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954.

Asserting that jurisdiction, the trial court, with the aid of a Master and the taking of voluminous testimony, fully heard and fully adjudicated plaintiff's motions for restitution of the precise amounts sued for in the cases from which these appeals come. The Supreme Court on appeal, as fully heard and determined that the defendant's equities countervailed and overthrew plaintiffs' asserted rights, and upon that determination, reversed, for want of equity in the demands, the judgment awarding plaintiffs' recovery, with directions to the trial court to dismiss the proceedings. Nothing in the opinion orders, nothing in it looks to or suggests, a turning away from decision of the issues tendered, to remit plaintiffs to their remedy by a suit at law. On the contrary, the opinion affirmatively declares that defendant's equities override plaintiff's claims, no matter how asserted, whether in equity or at law. [3] Thus, not only does it plainly appear, from the mandate to and the order of the trial court, that there was a complete and final adjudication of plaintiffs' claims and demands, but the opinion itself makes this more precisely clear. Appellant's argument that the Federal Court proceedings presented a case like Kelliher's, supra, or like Langford v. Bond Realty Corp., 5 Cir., 47 F.2d 480, of a mere refusal to exert the equity jurisdiction without prejudice to plaintiff's rights to seek relief at law, will not do. For, here was a case of an actively and fully exerted jurisdiction, to the point, of taking full testimony on plaintiffs' rights to recover as for moneys wrongfully had and received, and of entering an affirmative decree in their favor, a decree which was reversed upon appeal for want of equity with directions to dismiss the proceedings.

Of the conclusive effect of the decision and the order of dismissal in finally adjudicating against plaintiffs, the claims they sued on there and here, the minority opinion in the Atlantic case declares: "We are told that restitution is an equitable doctrine

---

[3] Moses v. MacFerlan, 2 Burr 1005; Atlantic Coast Line v. Florida, 295 U. S. 301, 309, 310, 313 and 314, 55 S. Ct. 713, 715, 718, 719, 720, 79 L.Ed. 1451.

"The question now is whether restitution is owing from the carrier for the whole or any part of the rates collected from its customers while the first order was in force. The narrative must be expanded to bring us to an answer. * * *

"The claim for restitution yields to the impact of these converging equities with all their cumulative power. It would yield to such an impact, though the action to which it is an incident were triable in a court of law. * * *

"A very different situation is shown to us here. A complex of colorable right and procedural mistake has brought about a situation in which the equities of the carrier, if they are not protected by the court, will be unprotected altogether. * * * · ·

"The case up to this point has been dealt with on the assumption that the award upon restitution is to be for the whole demand or nothing. There is, however, a possibility between these two extremes, a possibility exemplified in the decree of the court below. * * * We think the claim for restitution should have been rejected altogether. * * *

"The claimants do not sustain the burden that is theirs by showing that the master set up a reasonable schedule. They must show that the other schedule, the one set up by the Commission, is unreasonable. In the absence of such a showing, the carrier does not offend against equity and conscience in standing on its possession and keeping what it got.

"The decree is reversed, and the cause remanded, with instructions to dismiss the claims. * * * *"

and that as the court, upon consideration of all the facts, should hold there was no inequity in the carrier's retaining what it had collected, refusal of a decree is merely to withhold action, as a court of equity is always free to do in such circumstances. But the weakness of this argument is, that by refusing relief the court in effect denies legal rights. It is not suggested that a dismissal of the motion will not be res judicata in any action hereafter brought to recover for overcharges; and if so, the decision in this case is an adjudication by a federal court that the collection of the increased rate was lawful, the invalidity of the Commission's order and the law of Florida to the contrary notwithstanding."

Of it, in the Morgan Case, United States v. Morgan, 307 U.S. 183, 195, 196, 59 S.Ct. 795, 801, 83 L.Ed. 1211, after stating, "This Court went much further * * * in denying, on equitable grounds, restitution to shippers of the excess of an intrastate rate," it was said: "The final result of the litigation was that the railroads were permitted to collect and retain the higher rates for a period during which there was no lawful order of the Commission superseding the state commission rates. There, as here, the administrative agency could prescribe rates only for the future, and the higher rates exacted between the .date of the first order and the second were without the sanction of a valid order. But there, as here, the first administrative order was not a nullity. * * * The rates did not lose their unjust and unreasonable quality in the one case, or cease to be unjustly discriminatory in the other, merely because the administrative orders in each were voidable for procedural defects or because a second order could operate only for the future. In each case the administrative agency was not without power to inquire whether injustice had been done by the earlier rate, and the court, called on to ascertain, according to equitable principles, the rights of the parties with respect to payments made under the voidable order, could take into account the subsequent determination of the administrative agency as the basis of its action."

Nor do appellants stand any better on the point that the cause of action asserted in these cases, is a different one from that asserted in the Federal Court proceedings. While it may not be denied that, procedurally, the form of the action is different in the two proceedings, it may equally not be denied that in substance they are the same. The emphasis which, in earlier times, was upon forms, rather than upon causes, of action, is fast disappearing if it has not already disappeared, giving place to emphasis upon the facts which when pleaded and proved in support of a claimed right, will entitle claimant to relief. What is important and determinative now as to the identity of causes of action, is not identity of form, but of grounds. Cf. Federal Reserve Bank v. Atlanta Trust Company, 5 Cir., 91 F.2d 283, 117 A.L.R. 1160; Moore's Federal Practice, Vol. 1, Page 145, and notes. Tested by these rules, the action in the Federal Court proceedings for restitution of freight moneys unlawfully had and received, which ex aequo et bono, plaintiffs should recover, are identical with the actions here for the same moneys on the same grounds. Every element important in determining the identity of two causes of action, claims or demands, is present here. Authorities, supra. The mere fact that in one case, the action was equitable in form and in the other, is legal, is of no importance. It is stipulated, "the claims involved in these causes are the same and recovery is herein sought of the same overcharges which were asserted by plaintiffs in the restitution proceedings in the Federal Court." The same plaintiffs and the same defendant are parties, to both proceedings. "A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function," Atlantic Coast Line v. Florida, supra. Though legal in form the grounds of plaintiffs' actions here are identical with those in the restitution proceedings. Those grounds are, that defendant has moneys which, ex aequo et bono, it should not withhold from plaintiffs, or otherwise stated, that the circumstances are such that equitably, the defendant should restore to plaintiffs what it has received. "Invented by the common-law judges to secure relief from the narrow restrictions of the common-law procedure," Heywood v. Northern Assurance Co., 133 Minn. 360, 158 N.W. 632, 633, Ann.Cas. 1918D, 241; Whitcomb v. Brant, 90 N.J.L. 245, 100 A. 175, L.R.A.1917D, 609. The elements of such an action and the defenses to it are the same, whether the action is asserted in equity or at law. Moses v. MacFerlan, supra, Atlantic Coast Line v. Florida, supra; Carter Music Co. v. Bass, D.C., 20 F.2d 390, 393; Champ Spring Co. v. United States, 8 Cir., 47 F.2d 1, 3; Hartwell Mills v. Rose, 5 Cir., 61 F.2d 441, 443;

First State Bank of Ft. Meade v. Single-tary, 124 Fla. 770, 169 So. 407; Southern States Power Co. v. Pittman, 122 Fla. 758, 165 So. 893.

The judgment was right. It is affirmed.

Affirmed.